IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LA CORA GRIFFIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO:  2:13-cv-927-WKW-WC |
| | ) | |
| FOOD GIANT SUPERMARKETS, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

# RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.      INTRODUCTION

On December 18, 2013, La Cora Griffin ("Plaintiff") filed a Complaint against Food Giant Supermarkets, Inc.,[1] purporting to allege claims of unlawful race and gender-based employment discrimination and harassment as well as retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII").  Jurisdiction is proper under 28 U.S.C. § 1331.  On January 14, 2014, the District Judge entered an Order (Doc. 3) referring this matter to the undersigned Magistrate Judge "for further proceedings and determination or recommendation as may be appropriate."

Presently before the court are several motions filed by the parties, including: a) Defendant's Motion to Dismiss Pursuant to Rule 37 for Plaintiff's Failure to Comply

---

[1]   Plaintiff also sued several individual defendant-employees of Food Giant in her complaint. On March 26, 2014, the District Judge entered an Order (Doc. 12) adopting the undersigned's Recommendation (Doc. 10) that the individual defendants be dismissed from this action because

With the Court's Order (Doc. 45); b) "Plaintiff's Motion of Objection" (Doc. 48); c) Defendant's Motion for Summary Judgment (Doc. 49); and d) Plaintiff's "Motion to Assign Master" (Doc. 53). Upon consideration of Defendant's Motion for Summary Judgment, the evidentiary materials filed in support thereof, and the pleadings of the parties, and for the reasons that follow, the undersigned Magistrate Judge RECOMMENDS that the Motion for Summary Judgment be granted and that all other pending motions be denied.

## II.    STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court shall grant a motion for "summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes about material facts will preclude the granting of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. A[] [dispute] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion[,]" and alerting the court to portions of the record which support the motion. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323

---

Title VII provides for relief against the employer, not individual employees whose actions might violate the Act.

(1986).   However, once the movant has satisfied this burden, the nonmovant is then similarly required to cite to portions of the record which show the existence of a material factual dispute.  *Id.* at 324.  In doing so, and to avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A) & (B).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact" as required by Rule 56(c), then the court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2) & (3).

In determining whether a genuine dispute for trial exists, the court must view all the evidence in the light most favorable to the nonmovant.  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).  Likewise, the reviewing court must draw all justifiable inferences from the evidence in the nonmoving party's favor. *Anderson*, 477 U.S. at 255.  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine

3

dispute of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

## III.   STATEMENT OF FACTS

The undersigned has carefully considered the pleadings in this case and all documents submitted in support of the Motion for Summary Judgment. The submissions of the parties, viewed in the light most favorable to the nonmoving party, establish the following relevant facts:[2]

Plaintiff filed a charge of discrimination with the EEOC on September 12, 2013. Charge of Discrimination, Ex. 12 to Pl.'s Dep. (Doc. 51-4) at 122. The EEOC issued a Dismissal and Notice of Rights on September 30, 2013. Notice of Rights, Ex. 14 to Pl.'s Dep. (Doc. 51-4) at 136. Plaintiff filed the instant complaint against Food Giant Supermarkets, Inc., on December 18, 2013. Compl. (Doc. 1). Plaintiff is an African-American female. Pl.'s Dep. (Doc. 51-4) at 30:16-21. Plaintiff claims she was denied a promotion, harassed, and terminated because of her race, sex, and complaints about perceived health code violations. Compl. (Doc. 1).

Plaintiff interviewed with Store Manager Ben Hogan (African-American male), and Hogan offered her a job as a deli clerk on June 3, 2011. Pl.'s Dep. at 35:10-14,

---

[2]   Notwithstanding her "Motion to Assign Master" (Doc. 53), which is in no way responsive to Defendant's Motion for Summary Judgment, and in spite of provisions in the court's Uniform Scheduling Order ("USO") instructing her to do so, *see* USO (Doc. 22) at 2-3, Plaintiff did not file a response to the Motion for Summary Judgment. Thus, she has not set forth a statement of facts apart from the allegations of her complaint. Moreover, because Plaintiff has not intelligibly responded to the Motion for Summary Judgment, she has not challenged Defendant's recitation of undisputed facts. Indeed, Defendant makes clear that Plaintiff declined to respond when, pursuant to the USO, it provided her with its statement of facts prior to filing for summary judgment. *See* Def.'s Br. (Doc. 50) at 2, n. 1. Accordingly, the undersigned herein largely adopts Defendant's statement of facts since it is undisputed by Plaintiff. *See*

37:20-38:8.  Plaintiff remained in this position until her termination by Food Giant on May 29, 2012.  Personnel Status Form Exs. A & B to Affidavit of Peggy Gates (Doc. 51-2).  Plaintiff's supervisors at the time of her hiring were as follows: a) Store Manager Hogan; b) Assistant Store Manager Rick Shirah (Caucasian male); c) Night Manager Daryl Byrd (African-American male); d) Deli Manager Cindy Starks (African-American female); and e) Assistant Deli Manager Louise Beasley (African-American female).  Pl.'s Dep. at 40:4-13.

### A.   Failure to Promote Claim

Starks was terminated in December, 2011.  Affidavit of Ben Hogan (Doc. 51-3) ¶ 4.  Beasley was promoted to Deli Manager, leaving the Assistant Deli Manager position vacant.  *Id.*; Compl. (Doc. 1) at 2; Pl.'s Dep. at 59:1- 3.  Plaintiff was offered the opportunity to train for the position of Assistant Deli Manager in December of 2011.  *Id.*  Plaintiff trained for the Assistant Deli Manager position from December of 2011 until her termination in May of 2012.  Pl.'s Dep. at 63:1-3.   During Plaintiff's employment, no one was promoted to Assistant Deli Manager after Starks was terminated.  Hogan Aff. (Doc. 51-3) ¶ 4.  Plaintiff believes that she was denied promotion to the Assistant Deli Manager position because of retaliation over her threats to report Food Giant to the health department.  Pl.'s Dep. at 64:18-65:3.

### B.   Racial and Sexual Harassment Claims

Plaintiff's racial and sexual harassment claims are based on the conduct of Hogan, Shirah, and Beasley.  Compl. (Doc. 1).  Food Giant has written policies prohibiting

---

Fed. R. Civ. P. 56(e)(2).

discrimination and harassment based upon race and sex.  EEO Policy, Ex. G to Gates Aff.
(Doc. 51-2); Harassment Policy, Ex. J to Gates Aff. (Doc. 51-2).  Employees are directed
to report objectionable conduct to their supervisors or by contacting the Human Resource
Department on the Employee Hotline at any time.  *Id.*  Plaintiff received and signed a
memorandum articulating Defendant's equal employment and harassment policies, Ex. 2
to Pl.'s Dep. (Doc. 51-4) at 95, and acknowledged that Hogan reviewed these policies
and procedures with her when she was hired.  Pl.'s Dep. at 43:19-44:8.

Plaintiff's allegations of race and sex-based discrimination and harassment appear
to be as follows: Plaintiff alleges that her workplace "became hostile" on her birthday,
December 2, 2011, when Shirah approached her and asked "when [she] was gonna start
doing [her] job."  Compl. (Doc. 1).  Shirah then sent her home and, when Hogan returned
to work, she was "cussed out."  *Id.*  Plaintiff also alleges that Hogan once threatened to
fire "all of us Mother F-----' B------" if he caught deli employees throwing away food.
*Id.*[3]  Plaintiff also alleges that Hogan commonly referred to her as "team wolf."  Pl.'s
Dep. at 50:22-24.  Hogan explained that the term meant she "was the leader of the pack."
*Id.*  Plaintiff believes that calling her "team wolf" was a racial remark.  *Id.* at 129:21-
131:7.  Plaintiff further accuses Hogan of harassing her by expressing that he "ate dark
meat, and preferred white meat" when she asked him how he likes his chicken.  Compl.
(Doc. 1); Pl.'s Dep. at 122:3-25.  Plaintiff believes this was a "sexual remark."  Pl.'s Dep.
at 42:15-25.  Plaintiff also accuses Hogan of sexual harassment due to several incidents

---

[3]   Plaintiff testified repeatedly that Hogan actually threatened to fire "Black A—B------" in the
deli.  Pl.'s Dep. at 23:15-17, 137:17.

of alleged brushing up against her, beginning sometime around mid-August 2011. *Id.* at 110:2-13. Plaintiff states that the alleged brushings almost always had the pretense of inadvertence, and that Hogan would often remark along the lines of "oh, excuse me, team wolf." *Id.* at 111:17-24. Although Plaintiff acknowledged that some of the incidents might have been accidental, *Id.* at 118:10-13, after the third such incident, Plaintiff confronted Hogan and accused him of intentionally brushing against her as a form of sexual harassment or abuse. *Id.* at 116:8-25. Plaintiff acknowledged that she felt Hogan was the only person who sexually harassed her. *Id.* at 152:8-10. Plaintiff did not report any of Hogan's alleged conduct to the corporate office as instructed by the policy documents she reviewed when she was hired. *Id.* at 121:7-18.

Plaintiff appears to allege that Beasley sexually harassed her because she "would bring sex oils to work and always talking about sex acts with other employees and myself." Compl. (Doc. 1). However, as stated above, Plaintiff testified at her deposition that she believes Hogan was the only employee who sexually harassed her. Pl.'s Dep. at 152:8-10.

Plaintiff does not allege that Shirah harassed or discriminated against her on the basis of her sex. However, she complains that Shirah intimidated her by standing too close to her, that he always found a reason to write her up when Hogan was away from the store, and that he "harassed" her during the week of her termination by watching her time card to make sure that she did not get overtime. Compl. (Doc. 1). Without alleging that any of his conduct was racially animated, Plaintiff speculates "maybe it is a white and black issue since he's the only one that used to write me up." Pl.'s Dep. at 135:8-11.

### C.     Termination

Food Giant utilizes a progressive discipline policy.  *See* Ex. I to Gates Aff. (Doc.
51-2).  The written policy provides for termination following an oral counseling session,
a written warning, and a final written warning.  *Id.*   Notably, where "an employee
receives a second written warning within a twelve (12) month period of time, the
employee should be terminated."  *Id.*   Furthermore, the "three (3) reprimands (oral,
written, final) do not have to be for identical infractions, provided the employee has been
properly counseled."  *Id.*

Food Giant's Employee Handbook, which Plaintiff acknowledged reading, *see*
Pl.'s Dep. at 53:17-54:13, instructs that "All overtime must be approved in advance by
management."  Ex. 4 to Pl.'s Dep. (Doc. 51-4) at 103.  The Handbook also establishes
Standards of Conduct, the violation of which "could result in disciplinary action up to
and including discharge."  *Id.* at 105.  Among those "Standards" are that employees are
not allowed to work off the clock, falsify their time card or record, use "insulting or
abusive language," or refuse "to follow the instructions of a supervisor, [commit] gross
misconduct, or insubordination."  *Id.*  Plaintiff was disciplined several times during the
course of her employment at Food Giant for violations of these standards, including the
following: on September 28, 2011, Plaintiff was given a written warning for failing to
speak to management with respect (Ex. A to Hogan Aff. (Doc. 51-3)); on January 1,
2012, Plaintiff was given a written reprimand, and was suspended for a week, for arguing
with a manager over the manager's instructions to her (Ex. B to Hogan Aff. (Doc. 51-3));
on May 24, 2012, Plaintiff received another written reprimand for her attitude in response

8

to management orders and working beyond her scheduled time (Ex. C to Hogan Aff. (Doc. 51-3)); and on May 27, 2012, Plaintiff received another written reprimand after a customer complained that Plaintiff was rude to her concerning an order at the deli (Ex. D to Hogan Aff. (Doc. 51-3)).

Finally, on May 29, 2012, Plaintiff was terminated for being rude to a customer and having a bad attitude toward management.  Ex. E to Hogan Aff. (Doc. 51-3). Plaintiff believes that she was terminated because of her threats to report purported unsanitary conditions in the Food Giant deli to the Health Inspector.  Pl.'s Dep. at 104:9-19.

## IV.    DISCUSSION

### A.    Disparate Treatment – Race and Gender Discrimination

Plaintiff's complaint alleges that Defendant discriminated against her on the basis of her race and sex.  However, the complaint never clearly articulates Plaintiff's belief that she was subjected to any adverse employment action as a result of her race or gender. Although Plaintiff appears to describe at least two adverse employment actions—the failure to promote her to Assistant Deli Manager and her termination—as set forth above, Plaintiff unequivocally testified to her belief that those employment actions were the product of retaliation over her threats to report Food Giant to the health inspector. Elsewhere, Plaintiff mused in her deposition that perhaps Shirah was motivated by racial animus since he was the only one who wrote her up and he is Caucasian.  Pl.'s Dep. at 135:8-11.   However, Plaintiff never specifically identifies any adverse employment action and alleges that it was the result of her race or gender.

9

Racial and gender disparate treatment claims require a *prima facie* showing of discriminatory intent, *E.E.O.C. v. Joe's Stone Crab*, 220 F.3d 1263, 1286 (11th Cir. 2000), which "can be established three ways: 1) direct evidence; 2) circumstantial evidence; or 3) statistical proof." *Davis v. City of Panama City, Fla.*, 510 F. Supp. 2d 671, 681 (N.D. Fla. 2007) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)).  Plaintiff has not provided direct evidence that discrimination was the reason for any alleged adverse employment action, nor has she proffered statistical evidence or evidence of a pattern of discrimination in this case.  Because Plaintiff's discrimination claim therefore relies on circumstantial evidence, the claim is analyzed under the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

Under the *McDonnell Douglas* framework, Plaintiff must first create a presumption of discrimination by establishing a *prima facie* case.  *McDonnell Douglas*, 411 U.S. at 802.  If Plaintiff establishes a *prima facie* case, then the burden shifts to Defendant to show a legitimate, non-discriminatory reason for its employment action." *Burke-Fowler v. Orange Cty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (citing *Joe's Stone Crab, Inc.*, 220 F.3d at1286).  If Defendant does so, the burden shifts again to Plaintiff to "prove that the reason provided by the defendant is a pretext for unlawful discrimination."  *Id.*

10

1.      **Establishing a *Prima Facie* Case**

"[T]he plaintiff first has the burden of establishing a *prima facie* case of discrimination, which creates a rebuttable presumption that the employer acted illegally." *McCalister v. Hillsborough County Sheriff*, 211 F. App'x 883, 884-85 (11th Cir. 2006). "To establish a prima facie case for disparate treatment in a race [or gender] discrimination case, the plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job." *Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006).  In general, as to the third prong of the *prima facie* test, in order to identify a viable comparator,

> the plaintiff must show that [s]he and the employees are similarly situated in all relevant respects.  *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 17 (1st Cir. 1994); *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992); *Smith v. Monsanto Chemical Co.*, 770 F.2d 719, 723 (8th Cir. 1985), *cert. denied*, 475 U.S. 1050 (1986).  In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.  *Williams v. Ford Motor Co.*, 14 F.3d 1305, 1309 (8th Cir. 1994).  *If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present.  See, e.g., Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 182 (1st Cir. 1989).

*Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (emphasis in original).  A proper comparator is an employee outside of the plaintiff's protected class who is similarly situated to the plaintiff "in all relevant respects."  *Coar v. Pemco Aeroplex, Inc.*, 372 F. App'x 1, 3 (11th Cir. 2010) (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091

(11th Cir. 2004)).  "This prevents 'courts from second-guessing employers' reasonable decisions and confusing apples with oranges.'"  *Id.* (quoting *Burke-Fowler v. Orange Cnty.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (quotation omitted)).

> [I]n disciplinary contexts, the quality and quantity of a comparator's conduct must be nearly identical to the plaintiff's in order to prevent courts from second-guessing a reasonable decision by the employer.  *Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999).  While not always the case, differences in treatment by different supervisors or decisionmakers can seldom be the basis for a viable claim of discrimination. [*Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 n.5 (11th Cir. 2001)].

*Foster v. Biolife Plasma Servs., LP*, 566 F. App'x 808, 811 (11th Cir. 2014).

In this instance, Plaintiff's testimony that the failure to promote her and the decision to terminate her were retaliation for her threats to report Food Giant to the health inspector is fatal to any claim that such adverse employment actions were the result of disparate treatment based upon her race or gender.  Even if Plaintiff's own testimony were not fatal to any disparate treatment claim, she has failed to establish a *prima facie* case of disparate treatment related to her failure to promote and termination claims. Plaintiff does not identify any employee outside of her protected class that was treated more favorably than she.  With respect to Plaintiff's failure to promote claim, as set forth above, Food Giant did not promote any individual to the Assistant Deli Manager position during Plaintiff's employment.  With respect to Plaintiff's termination, which was based at least partly on Plaintiff's working overtime without preauthorization, Plaintiff only mentioned at her deposition that another employee, Jennifer Belscher, was similarly supposed to be off the clock at the same time as her, but that Shirah "never said anything to her about her being on a time clock."  Pl.'s Dep. at 125:14-15.  Plaintiff wonders why,

12

"if both of us are standing up here and we're supposed—both of us are supposed to be on the clock—off the clock at 2, why is it that you're just going to come up and—to me and say something and not say anything to Jennifer?"  *Id.* at 125:15-19.   To the extent Plaintiff might proffer Belscher as a comparator for any disparate treatment or termination claim, Plaintiff fails to establish a *prima facie* case because Jennifer Belscher is an African-American female and is therefore not outside either of Plaintiff's subject protected classes.  *See id.* at 87:2-12.

Stripped of any contention that the failure to promote Plaintiff or her termination were the product of animus over Plaintiff's race or gender, all that is arguably left of Plaintiff's disparate treatment claim is her contention that perhaps Shirah discriminated against her because he is the only one who wrote her up and he is Caucasian.  Defendant is entitled to summary judgment on any such claim which might be construed from the complaint.  Plaintiff's idle speculation that Shirah may have discriminated against her is insufficient and, in any event, Plaintiff fails to identify any comparator from outside of her protected classes for purposes of any disparate discipline claim.  Indeed, not only does Plaintiff fail to allege that non-African-American or non-female employees were not subject to disciplinary actions for conduct similar to hers, she affirmatively testified that employees were treated the same regardless of their race.  *See id.* at 140:4-7 ("Anybody in the front of the house that's behind that counter is treated better than anybody in the back.  It doesn't matter what race you are.").  Plaintiff has simply failed to establish a *prima facie* case of disparate treatment based upon her race or gender.  Accordingly, Defendant is entitled to summary judgment on any claim alleging such disparate

treatment which might be construed in the complaint.

## B.    Racial and Sexual Harassment Claim

Plaintiff also appears to allege that she was subjected to a racially and sexually

hostile work environment.  In general,

> Title VII prohibits a hostile work environment in which "a series of
> separate acts . . . collectively constitute one 'unlawful employment
> practice.'"  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117
> (2002) (citing 42 U.S.C. § 2000e-5(e)(1)).  As opposed to "[d]iscrete acts
> such as termination, failure to promote, denial of transfer, or refusal to
> hire," a hostile work environment claim addresses acts "different in kind"
> whose "very nature involves repeated conduct," such as "'discriminatory
> intimidation, ridicule, and insult.'"  *Id*. at 114-16 (quoting *Harris v. Forklift
> Sys., Inc*., 510 U.S. 17, 21 (1993)). Thus, these "claims are based on the
> cumulative effect of individual acts."  *Id*. at 115.

*McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008)

> To establish a claim of a hostile work environment, an employee must
> prove that "the workplace is permeated with discriminatory intimidation,
> ridicule, and insult, that is sufficiently severe or pervasive to alter the
> conditions of the victim's employment and create an abusive working
> environment."  *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993).  The
> employee must prove five elements if [s]he bases h[er] harassment claim on
> race [or gender]: (1) that [s]he is a member of a protected class; (2) that
> [s]he was subjected to unwelcome racial [or sexual] harassment; (3) that the
> harassment was based on h[er] race [or sex]; (4) that the harassment was
> severe or pervasive enough to alter the terms and conditions of h[er]
> employment and create a discriminatorily abusive working environment;
> and (5) that the employer is responsible for the environment under a theory
> of either vicarious or direct liability. *Miller v. Kenworth of Dothan, Inc*.,
> 277 F.3d 1269, 1275 (11th Cir. 2002).

*Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248-49 (11th Cir. 2014).  As set out

above, Plaintiff's claim that she was subjected to a racially or sexually hostile work

environment is predicated on her allegations that 1) Hogan referred to her and other deli

workers as "Mother F----- B------" or "Black A—B------"; 2) Hogan's statement, when

14

asked by Plaintiff how he likes his chicken, that he "eats dark meat, but likes white meat"; 3) Hogan's referring to Plaintiff as "team wolf"; 4) Hogan's instances of brushing-up against Plaintiff; 5) Beasley's bringing sex oils to work and talking about sex acts; and 6) Shirah's intimidating and harassing Plaintiff by standing too close to her. Compl. (Doc. 1).

Most of the conduct identified by Plaintiff is not connected to her race or sex.  For example, Hogan's explanation about his chicken preferences appears, according to Plaintiff's own testimony, to have been a straightforward answer to Plaintiff's question about what kind of chicken he likes.  Plaintiff testified as follows:

> We had - we – like we were cleaning.  I was cleaning those things on the side.  And he just came up to me and said, I heard you make the best chicken.  I don't remember the exact day it was, but I know he said you make the best – I heard you make the best chicken in town.  And he said – I said to him, do you want white meat because we – that's the way we serve it.  You either serve white meat, you get dark meat, or you get it mixed. And mixed is the white and dark meat together.  And he said, I eat dark meat, but I prefer white.  And I turn around him and tell him, everybody in the store knows that you date white women.

Pl.'s Dep. at 122:8-20.  As is apparent from Plaintiff's own testimony, Hogan simply answered Plaintiff's question about how he likes chicken, and it was Plaintiff who supplied the innuendo she finds in Hogan's answer.  Likewise, Plaintiff has made no showing that Hogan's referring to her as "team wolf" constitutes racial or sexual harassment.  Hogan explained that he used the nickname to denote that Plaintiff was "leader of the pack" of deli workers.  *Id.* at 50:22-24.  Plaintiff somehow construes the remark as racial because she is not an animal.  *Id.* at 130:1-131:7.  However, Plaintiff points to nothing in the record which permits the inference that Hogan, who is African-

15

American like Plaintiff, intended his nickname for her to be a racial remark.  Nor, despite Plaintiff's conclusory assertion that it was, is there any reason to construe it as such. Based upon the record, and Plaintiff's failure to provide any credible evidence of racial intent, the undersigned finds that Hogan's use of "team wolf" when referring to Plaintiff was nothing more than a racially-neutral nickname utilized by one African-American when referring to another.  It was not harassment based upon Plaintiff's race.  *See Walker v. Boys and Girls Club of Am.*, 38 F. Supp. 2d 1326, 1337 (M.D. Ala. 1999) ("Where the allegedly discriminatory decision makers are within the same protected class[,]" it is "extremely difficult for a plaintiff to establish discrimination.").   Finally, and as discussed in relation to Plaintiff's disparate treatment claims, Plaintiff points to nothing in the record, other than her own baseless speculation, that Shirah's conduct in disciplining Plaintiff was motivated by racial or sexual animus.  Nor does the mere act of standing "almost kissing distance," Compl. (Doc. 1), from Plaintiff when dealing with her permit the inference, without more, that Shirah sought to harass Plaintiff due to her race or sex.

The remaining conduct identified by Plaintiff—Beasley's sex oils and discussions of sex acts, Hogan's use of foul language when referring to the deli employees, and Hogan's alleged brushing-up against Plaintiff—arguably could be perceived as constituting some form of racial or sexual harassment.  However, based upon the record before the court, the undersigned cannot conclude that Plaintiff has met her burden of showing that "the harassment was sufficiently severe or pervasive to alter the terms and

conditions of employment and create a discriminatorily abusive working environment."

*McCann*, 526 F.3d at 1378.

> Determining whether the harassment was sufficiently severe or pervasive involves "both an objective and subjective component." [*Miller*, 277 F.3d at 1275]. In determining the objective element, a court looks to "'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Morgan*, 536 U.S. at 116 (quoting *Harris*, 510 U.S. at 23, 114 S.Ct. 367); *see also Miller*, 277 F.3d at 1275.

*McCann*, 526 F.3d at 1278.

With regard to Beasley's bringing sex oils to work and discussing sex acts around Plaintiff, Plaintiff does not allege that Beasley's conduct was so "severe or pervasive" that it somehow altered the terms or conditions of her employment. Plaintiff does not allege that Beasley forced her to participate in any discussion about sex acts or to view, or handle, her sex oils. More to the point, Plaintiff testified that, notwithstanding Beasley's alleged conduct, she considers Hogan the only employee to have sexually harassed her at Food Giant. Pl.'s Dep. at 152:8-10. As such, the undersigned cannot conclude that Beasley's conduct was even subjectively sufficiently severe or pervasive that it altered the terms or conditions of Plaintiff's employment, much less that it contributed in any material way to an objectively sexually charged or abusive working environment.

Taking Plaintiff's factual allegations in her complaint and her deposition testimony at face value, the undersigned accepts that Plaintiff found the remaining conduct of Hogan described above as subjectively harassing. However, for the reasons

that follow, the undersigned cannot conclude that, objectively, the complained of conduct was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive working environment.

With regard to Hogan's use of the expression "Mother F----- B------" or "Black A—B------," Plaintiff testified that Hogan used the offending language on only one occasion, and that he directed it at a group of employees, rather than just Plaintiff, when he was threatening to fire deli workers for throwing away food.  Compl. (Doc. 1); Pl.'s Dep. at 61:25-62:5 ("[B]ut Ben said that if we threw away food – if – management job was to throw away the food.  And if we threw away the food, he was going to fire all of us black a—b------ and start all over new.  And that was not only me.  There was like four or five other employees that he was standing there talking to.").  There is no allegation in the complaint or in Plaintiff's deposition testimony that Hogan regularly used this or any other racially or sexually derogatory language when referring to Plaintiff or even in her presence.  As such, the undersigned finds that this incident, even if nominally offensive, is simply too "sporadic and isolated to establish that her employers' conduct was so objectively severe or pervasive to alter the terms and conditions of her employment." *McCann*, 526 F.3d at 1379 (upholding award of summary judgment on racial hostile work environment claim where plaintiff was called "girl" one time and simply heard that other racial epithets had been used in the workplace).  *See also Marable v. Marion Military Inst.*, 595 F. App'x 921, 927 (11th Cir. 2014); *Dominguez v. Lake Como Club*, 520 F. App'x 937, 940-41 (11th Cir. 2013).

The other conduct constituting sexual harassment which Plaintiff attributes to Hogan is his alleged brushing against her and other employees. Plaintiff testified that the incidents typically occurred in the deli, which was a small, confined space cluttered with equipment, which meant that employees were "bumping into each other anyway" when working in that area. Pl.'s Dep. at 110:13-19. She testified that the incidents were normally the product of feigned accident:

> Okay. Our spaces are only so – so big, right? So say, for example, he's coming by and he's going to check the chicken that's over in this corner right here. He'll wait – he'll see me over here in this corner and he will walk up right behind me. And all of a sudden, you're – you're brushed up on me, right? So he be like, oh, excuse me team wolf. And I'm like what? I'm like, okay.
>
> So first time I'm like he's just—you know, maybe I'm just—I'm just making this up. Maybe I'm just thinking this. So then he'll walk by you accidentally. But now he rubbed—and he'll be like, excuse me, team wolf, I didn't mean that. And the last time—the third time I was like this man is doing this intentionally. He did it again. I said, excuse you. I said, you know what you're doing.
>
> . . . Instead of him saying, excuse me, let – can I come in there, he'll come up behind you, well, that look like it need a little bit of – why are you all over me? You're not supposed to be that close. You see, he's leaning up over me right now and you're touching me.

*Id.* at 111:17-112:17. Plaintiff testified that were more than three such incidents, and that they occurred from approximately mid-August of 2011 into February of 2012. Plaintiff conceded that up to three such incidents could be excused as accidents, but that "anytime you're after three you're not doing anything on accident." *Id.* at 118:10-14. Plaintiff believes that the incidents were not accidental because she considers Hogan a "pervert." *Id.* at 116:5.

19

The conduct alleged by Plaintiff falls well short of the threshold level of "severe or pervasive conduct sufficient to alter" Plaintiff's terms or conditions of employment. *See Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1247 (11th Cir. 1999) (collecting cases).   In *Mendoza*, for example, the Eleventh Circuit rejected the plaintiff's claim that she was subjected to a sexually hostile work environment where the plaintiff identified four separate instances of alleged sexual harassment, including:

> (1) one instance in which Page said to Mendoza "I'm getting fired up"; (2) one occasion in which Page rubbed his hip against Mendoza's hip while touching her shoulder and smiling; (3) two instances in which Page made a sniffing sound while looking at Mendoza's groin area and one instance of sniffing without looking at her groin; and (4) Page's "constant" following and staring at Mendoza in a "very obvious fashion."

*Id.* at 1247.  Applying the factors discussed in *McCann* compels the conclusion that the conduct alleged by Plaintiff does not suffice to establish a viable claim of an objectively sexually hostile work environment.  As to the frequency of the alleged conduct, Plaintiff offers only vague testimony that it occurred more than three times over a roughly six month period.  Given Plaintiff's testimony that the incidents occurred in tight, confined places where employees were naturally bumping into one another, and in which Hogan had every right to be in the performance of his job, the undersigned cannot conclude that the conduct was so frequent and pervasive so as to alter the terms or conditions of Plaintiff's employment.  Nor can the undersigned conclude that the alleged conduct was objectively severe.  Plaintiff's own testimony establishes that the incidents she describes occurred in tight areas where employees were already bumping into one another.  She testified that Hogan would apologize after brushing against her.  There is no testimony

20

that Hogan's alleged brushings were so intense, prolonged, or emphatic that, objectively, a reasonable person would find them so severe as to alter the terms or conditions of Plaintiff's employment.

Nor can the undersigned conclude that the alleged conduct was objectively physically threatening or humiliating. Again, given the circumstances surrounding the alleged instances, there is no evidence that Hogan deliberately targeted Plaintiff for unwanted sexually-charged touchings. Plaintiff admits that some of the instances could have been accidental, but does not explain why only three such incidents could be accidental.[4]   Plaintiff also does not assert that any of the alleged brushings were accompanied by any "verbal suggestions or advances." *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 585 (11th Cir. 2000), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Indeed, she testified that Hogan would apologize after he brushed against her. Courts have generally required far more extensive and degrading conduct to find that the offensive touching was sufficiently threatening or humiliating to establish a claim of a sexually hostile work environment. *See, e.g., Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1248 (11th Cir. 2004) (finding evidence of sexual harassment sufficient to preclude summary judgment where plaintiff described at least

---

[4]   Plaintiff's only rationalization for why Hogan's brushings could not have been accidental is her charge that he is a "pervert." However, Plaintiff does not point to any evidence to support such belief. She does not claim that he made sexual advances, overt or implied, to her when he brushed against her. She appears to believe that Hogan's alleged statement about eating dark meat but liking white meat is probative of her claim that he was sexually aggressive and a "pervert," but, as set forth above, Hogan's statement appears to have been a straightforward answer to Plaintiff's question about his chicken preferences and it is Plaintiff who appears to be layering his answer with innuendo that, objectively, simply is not there. There simply is no

eighteen incidents during two-and-a-half-week period, including "many direct as well as indirect propositions for sex," "following her into the restroom, and repeated attempts to touch her breasts, place his hands down her pants, and pull off her pants[,]" and "enlisting others to hold her while he attempted to grope her"); *Olson v. Lowe's Home Ctrs. Inc.*, 130 F. App'x 380, 388 (11th Cir. 2005) (finding conduct sufficiently threatening and intimidating where "over a span of 2 ½ months, Senkle subjected [plaintiff] several times a week to offensive sexual comments, and touched her at least three times," including an attempt to kiss plaintiff and "rubb[ing] his entire body (not merely a hand or hip)" against plaintiff with such rubbings being "forcible and not mere brushes").  Where the alleged touchings are more sporadic, brief, and objectively less forceful and intense, however, courts routinely find that plaintiffs have failed to establish a minimum threshold of objectively physically threatening or intimidating behavior to support a sexual harassment claim.  *See, e.g., Gupta*, 212 F.3d at 585 (finding that incidents where employee placed his hand on plaintiff's knee once and touched the hem of her dress once were not sufficiently severe, threatening, or humiliating because there were only two such incidents in six months, the incidents were "only momentary," and were not coupled with "verbal suggestions or advances"); *Lockett v. Choice Hotels Intern., Inc.*, 315 F. App'x 862, 866 (11th Cir. 2009) ("However, the alleged sexual remarks and two incidents of brief touching fall below the minimum level of severity or humiliation needed to establish sexual harassment."); *Mitchell v. Pope*, 189 F. App'x 911, 913-14 (11th Cir.

---

evidence in the record, other than Plaintiff's testimony about her subjective beliefs, to support any contention that Hogan's alleged conduct was sexual in nature.

2006) (affirming summary judgment where employer committed three unwanted touchings—including attempting to kiss plaintiff, lifting her over his head, and rubbing against her and reaching across her chest). Here, Plaintiff has only accused Hogan of brushing against her, and apologizing for having done so, on a few occasions when the two of them were in tight, confined spaces. Plaintiff has failed to put forward sufficient evidence that the alleged brushing incidents were so physically threatening or humiliating that they altered the terms and conditions of her employment.

The final factor to be considered is whether Hogan's conduct unreasonably interfered with Plaintiff's ability to perform her job. Plaintiff makes no allegation nor offers any testimony that she found her ability to do her job compromised by Hogan's conduct. Indeed, she testified that she adopted behaviors to allow her to perform her job and preclude Hogan from brushing against her: "if he said come here and let me show you something, I'd be like okay, I'm going to follow you. And that way he will be leading the direction and I would be behind him and he wouldn't have the opportunity to brush up on me." Pl.'s Dep. at 112:20-24. Plaintiff did not complain about Hogan's conduct to corporate human resources, and she continued training for the Assistant Deli Manager position and working a schedule so full that she sometimes worked overtime. It is therefore evident that, whatever Plaintiff's subjective beliefs about Hogan's behavior, objectively it did not unreasonably interfere with her ability to do her job.

For all of the foregoing reasons, the undersigned finds that Plaintiff has failed to establish that there is a dispute of material fact about whether she was subjected to racial or sexual harassment so severe and pervasive as to alter the terms and conditions of her

23

employment.   Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim that she was subjected to a racially or sexually hostile work environment.

### C.   Retaliation Claims

Plaintiff claims that she was subject to retaliation, including the failure to promote her to the Assistant Deli Manager position and her termination, in violation of Title VII. Retaliation is a separate violation of Title VII:

> Title VII . . . prohibits retaliation against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [thereunder]." 42 U.S.C. § 2000e-3(a). A *prima facie* case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001).

*Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).  If a plaintiff can establish a *prima facie* case of retaliation, "the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action."  *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 n.6 (11th Cir. 2000).   "If the defendant offers legitimate reasons, the presumption of retaliation disappears.   The plaintiff must then show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct."  *Id.*

Defendant contends Plaintiff is not able to establish a *prima facie* case of retaliation.   Def.'s Br. (Doc. 50) at 19-21, 32-33.   While Defendant concedes that

24

Plaintiff was subjected to adverse employment actions, including a failure to promote and termination, Defendant contends that Plaintiff has not shown that she engaged in statutorily protected expression. *Id.* at 32.

Defendant is correct. Plaintiff made clear, repeatedly, in her deposition that she believes she was not promoted and, eventually, terminated, due to her threats to report conditions in the Food Giant deli to the health inspector.[5] However, a reasonable person would not objectively believe that a threat to report a perceived health code violation is protected Title VII expression. It does not denote opposition to any employment practice outlawed by Title VII and does not constitute the making of a charge or testifying or otherwise participating in any proceeding or investigation of an unlawful employment practice under Title VII. In short, whether the sanitary conditions in the deli offend local laws has nothing to do with an unlawful employment practice predicated on the race or gender of the victim, and Plaintiff's threats to report such conditions to the health inspector therefore were not statutorily protected expression under Title VII. *See, e.g.,*

---

[5] For example, when asked whether she believes she was "denied the assistant manager position because of her race," Plaintiff articulated the supposed retaliatory motive behind the adverse actions against her:

> I think I was denied the assistant manager position – like I said, it's all about retaliation, health violation, house evaluations, that I told them I was going to call the health department. . . . They said that we had big mouths because we were like, there's flies in here and everything like that.
> . . .
> So since you're not following my rules and regulations because I'm breaking the law, then guess what, I'm going to get rid of you.

Pl.'s Dep. at 64:18-65:13. Plaintiff provided the same rationale for the decision to terminate her: "I feel, like I said, retaliation. I feel like I was still terminated because I told them I was going to tell on them, period." *Id.* at 104:11-13.

25

*Brush v. Sears Holdings Corp.*, 466 F. App'x 781, 786 (11th Cir. 2012) (holding that employee's complaints about adequacy of employer's procedure for investigating alleged sexual assault was not protected expression under Title VII for purposes of retaliatory discharge claim). Accordingly, Plaintiff has failed to establish a *prima facie* case of retaliatory failure to promote or termination, and Defendant is entitled to summary judgment on any such claim which arguably may be construed in the complaint.

## V.     OTHER PENDING MOTIONS

There are other pending motions before the court, including Defendant's Motion to Dismiss Pursuant to Rule 37 for Plaintiff's Failure to Comply With the Court's Order (Doc. 45), "Plaintiff's Motion of Objection" (Doc. 48), and Plaintiff's "Motion to Assign Master" (Doc. 53). Defendant's Motion to Dismiss is predicated on Plaintiff's misconduct in discovery, including her failure to adequately respond to Defendant's requests to produce documents. Defendant seeks dismissal of Plaintiff's complaint, as well as an award of attorney's fees, as a result of Plaintiff's actions. Plaintiff's "Motion of Objection" contains her general objection to Defendant's Motion to Dismiss and recounts her efforts to comply with Defendant's discovery requests and the court's orders in discovery. Because the undersigned is hereby recommending that Defendant's Motion for Summary Judgment be granted, the undersigned recommends that Defendant's Motion to Dismiss and Plaintiff's "Motion of Objection" be denied as moot. Likewise, because the undersigned believes that Plaintiff, who was granted *in forma pauperis* status when she initiated this action, will be unable to pay Defendant's expenses or attorney's fees in seeking to compel Plaintiff's participation in discovery or in preparing its Motion

26

to Dismiss, the undersigned recommends that Defendant's request for an award of attorney's fees be denied.

The final motion before the court is Plaintiff's "Motion to Assign Master" (Doc. 53). In this motion, which was filed shortly after Defendant filed its Motion for Summary Judgment, Plaintiff lists a litany of health issues which, she contends, affect her memory of the events described in her complaint. She appears to request that the court order a mental examination pursuant to Rule 35 of the Federal Rules of Civil Procedure. Pl.'s Mot. (Doc. 53) at 1. However, Plaintiff has articulated no good cause to order a mental examination as her mental or physical condition is not in controversy in this litigation. Fed. R. Civ. P. 35(a)(1). Whether or not Plaintiff's intervening health issues have affected her mental abilities is simply irrelevant to any claim in the complaint. It would advance no cause in this litigation to order a mental examination of Plaintiff.

Plaintiff also appears to request the appointment of a Master pursuant to Rule 53. Plaintiff merely recites the language of Rule 53. She does not explain why a Master should be appointed in this case. In any event, the prerequisites for such an appointment are plainly not met in this case. Plaintiff's motion is due to be denied.

## VI.   CONCLUSION

For the reasons stated above, the undersigned Magistrate Judge RECOMMENDS as follows:

a.      that Defendant's Motion for Summary Judgment (Doc. 49) be GRANTED and the complaint be DISMISSED with prejudice;

27

      b.      that Defendant's Motion to Dismiss Pursuant to Rule 37 (Doc. 45) be DENIED as moot;

      c.      that Plaintiff's "Motion for Objection" (Doc. 48) be DENIED as moot; and

      d.      that Plaintiff's "Motion to Assign Master" (Doc. 53) be DENIED.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **March 17, 2016**.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1; *see Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*).  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Done this 4th day of March, 2016.

/s/ Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE